

ORIGINAL
cj-agencies

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA

v.

DAVID ROY WILLIAMS (01)

No. **4-18CR0011 0**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JAN 1 8 2018

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

**INDICTMENT**

The Grand Jury charges that:

**Introduction**

At all times material to this indictment:

1.      The defendant, **David Roy Williams,** a resident of Fort Worth, Texas and

Mansfield, Texas, who had a Ph.D. in kinesiology (the study of the mechanics of body

movements), provided "personal fitness training" to his clients. **Williams** was a former

collegiate wrestler and power-lifter. **Williams** was not a medical physician and was not

licensed with the Texas Medical Board as a physician. **Williams** was also not licensed as

a therapist with the State of Texas.

2.      United HealthCare Services, Inc., Aetna, Inc., and Cigna were insurance

companies, which provided health insurance to individuals. Each company was a "health

care benefit program" as defined by 18 U.S.C. § 24(b), that affected commerce, and as

that term is used in 18 U.S.C. § 1347.

3.      In order to bill these insurance companies and health care benefit programs

for services performed, an individual had to be a "health care provider," as that term is

defined at 45 CFR § 160.103, and had to register with the Centers for Medicare and

Medicaid Services ("CMS") in order to obtain a National Provider Identifier ("NPI").

4.    A "health care provider" was defined in 45 CFR § 160.103, in relevant part, as a provider of "medical or health services." That phrase – "medical or health services" was defined, in 42 U.S.C. § 1395x(s), and did not include "personal fitness training."

5.    Given the volume of providers, CMS does not investigate or verify whether an individual is actually a health care provider before issuing an NPI number. Instead, CMS relies on the honesty of applicants.

6.    Current Procedural Terminology ("CPT") codes (typically in the form of a five digit number) are used by medical professionals to provide a uniform language that will accurately identify and describe services, supplies or procedures, and to provide an effective means for reliable nationwide communication among providers, patients, and third parties. CPT codes represent specific medical procedures and services that may be provided to beneficiaries/recipients and to individuals enrolled in private health care benefit programs. The American Medical Association develops, maintains, and distributes these codes, primarily through CPT manuals. In order for a health care provider to bill United HealthCare Services, Inc., Aetna, Inc., and Cigna, a health care provider had to utilize the appropriate CPT codes in submitting bills.

7.    Certain CPT Codes are used for the evaluation and management of the patient by the physician or other licensed provider, such as a physician assistant or nurse practitioner. These evaluation and management codes require that a physician or other licensed provider physically or remotely examine the patient.

An evaluation and management code may only be claimed for reimbursement if the patient is seen by a physician or licensed provider and that provider satisfies the elements of the claimed evaluation and management code.

8.     The evaluation and management code named in this indictment is CPT code 99215, which, as defined in the CPT manuals, is an office or other outpatient visit for the evaluation and management of an established patient which requires at least two of the three key components: (1) a comprehensive history, (2) comprehensive examination, and (3) medical-decision making of high complexity.  As the CPT manual indicates, services billed under this code "usually" related to problems of moderate to high severity.  The CPT manual further suggested that physicians typically spend 40 minutes face-to face with patient and/or family when billing for this code.

9.     The other code named in this indictment is CPT code 97110, which is a therapeutic procedure performed in a manner of effecting change through the application of clinical skills and/or services that attempt to improve function.  A physician or a therapist is required to have direct (one-on-one) patient contact to bill under this code.

10.    In order to bill these insurance companies (United HealthCare Services, Inc., Aetna, Inc., and Cigna), a health care provided had to complete a "health insurance claim form," otherwise known as Form 1500.  On the form, the health care provider had to identify the patient, identifiers for the patient, the date of service, and the CPT code for the service, procedure or supply that had been provided and was being billed.

The health care provider then had to sign the form and certify that the statements on the form were true, accurate, and complete, and that the health care provider had familiarized themselves with all applicable laws, regulations, and program instructions.

### Scheme and Artifice to Defraud

11.   Between in or about November 2012 and in or about August 2017, the defendant, **David Roy Williams,** engaged in a scheme to defraud insurance companies by submitting over $25 million in false and fraudulent claims for medical services.

12.   Between in or about November 2012 and in or about August 2017, **Williams** operated a company called "Kinesiology Specialists," among others, and advertised on his website, getfitwithdave.com. **Williams** offered "in-home fitness training and therapy" through his company and website.

13.   **Williams** identified himself as "Dr. Dave" and stated that he served clients in "most of Texas, Las Vegas, Denver, Tucson, Seattle, and Orlando." Through his website, **Williams** told potential clients that he was "accepting most health care insurance coverage plans."

14.   In order to bill insurance companies for his services, **Williams** enrolled as a health care provider with the Centers for Medicare and Medicaid Services ("CMS") in an effort to obtain a National Provider Identifier ("NPI").

15.   In completing the application, **Williams** falsely certified, in writing and by execution of his signature, that he was a "health care provider" as that term is defined at 45 CFR § 160.103.

16.     **Williams** enrolled as a health care provider at least nineteen times under different names or variations of his name and his company names.  This was done in an effort to divert attention away from his fraudulent billing.

In each application, **Williams** falsely certified that he was a "health care provider."

17.     **Williams** billed the insurance companies as if he were a medical physician and as if he had provided care requiring "medical decision making of high complexity." Williams used Form 1500s to submit his billing and signed those form as the physician or supplier.  As **Williams** knew, the victim insurance companies would not have paid **Williams** had they known that he was not a medical physician and was not providing care requiring "medical decision making of high complexity."

18.     Instead, **Williams**, provided fitness and exercise training to his clients.

19.     **Williams** recruited potential clients through the use of flyers, the internet, and word-of-mouth.  A significant portion of his clients were employees or dependents of employees of Southwest Airlines.

20.     Once recruited, **Williams** would typically meet with or speak with the new client over the phone and review their health history and goals for their planned fitness training.  **Williams** would then typically assign a personal trainer to that individual.  The personal trainer typically met with the client between one and three times a week for approximately one hour and provided fitness training.  These trainings often took place in the client's home or in a local park.

21.   **Williams** would then bill insurance companies for each training session using certain CPT codes. For example, **Williams** billed for services under CPT Code 99215 and 97110, even though those codes required the involvement and supervision of a physician. **Williams** was not a physician, a physician was not involved, and a physician did not supervise these interactions with clients.

22.   Instead, **Williams** oversaw numerous individuals that worked for him as personal trainers. **Williams** would bill the work of these trainers under CPT Codes 99215 and 97110 as if a physician had performed, been involved in, or supervised the work, when, in fact, a physician had not. In addition, on certain occasions, **Williams** billed for services that neither he nor his staff, ever provided. When alerted to these instances by his clients, **Williams** took no action to pay back or reimburse the insurance companies for the money he had improperly obtained.

23.   For example, between December 23, 2012, and February 5, 2015, **Williams** billed United HealthCare Services, Inc. at least $2.5 million using these codes, even though the work performed by **Williams** and his staff was not performed by a physician, did not involve a physician, and was not under the supervision of a physician.

24.   In December 2015, **Williams** and United HealthCare Services, Inc. entered into a "Settlement Agreement" whereby **Williams** agreed to repay United HealthCare Services, Inc. $630,000.

25.   Since the date that he entered into the Settlement Agreement with United HealthCare Services, Inc. (December 19, 2015) and after which he was clearly notified of his fraudulent billing, **Williams** continued to bill United HealthCare Services, Inc. for an

amount exceeding $13 million under different tax id numbers in an attempt to conceal the relationship between the billing and **Williams'** true identity.

26.     United HealthCare Services, Inc. would not have paid any amounts to **Williams** for these claims if United HealthCare Services, Inc. knew it was **Williams** who was submitting the claims.

27.     As another example, between January 11, 2011, and November 30, 2014, **Williams** billed Aetna for at least $900,000 using these codes, even though the work performed by **Williams** and his staff was not performed by a physician, did not involve a physician, and was not under the supervision of a physician.

28.     In January 2015, Aetna informed **Williams** that Aetna had realized that **Williams** had improperly billed Aetna for these amounts.  Aetna further informed **Williams** that it was their belief that **Williams** had engaged in a pattern of "abusive billing" and they had learned that **Williams** was not licensed with the Texas State Licensing Board, as required by Aetna's medical plans.

29.     In January 2016, **Williams** and Aetna entered into a "Settlement Agreement and Release," whereby **Williams** agreed to repay Aetna $240,000.  **Williams** also agreed not to bill Aetna "for any future claim unless he is licensed under applicable state law to provide the services billed and the claims conform to then current CPT and HCPC Code definitions."

30.     Since the date that he entered into the Settlement Agreement and Release with Aetna (January 26, 2016) and after which he was clearly notified of his fraudulent billing, **Williams** continued to bill Aetna for an amount exceeding $300,000 under

different tax identifiers numbers in an attempt to conceal the relationship between the billing and **Williams'** true identity. Aetna would not have paid any amounts to **Williams** for these claims if Aetna knew it was **Williams** who was submitting the claims.

31. On or about May 16, 2017, federal agents approached **Williams** and explained that they were investigating fraud committed by **Williams**. Days later, **Williams** utilized a new NPI number under an entity called "Mansfield Orthopedic Associates" and then billed United HealthCare Services, Inc. through that company and NPI number for additional fraudulent billing.

32. Between in or about November 2012 and in or about August 2017, **Williams** was paid in excess of $3.9 million in relation to his fraudulent billing of United HealthCare Services, Inc., Aetna, Inc., and Cigna.

33. **Williams** used these funds, in part, to pay for certain personal assets, including: (1) his residence, located at 4503 Blue Grass Circle, Mansfield Texas; (2) a 2014 Toyota Tundra; (3) 2015 Harley Davidson, and (4) 2015 Ford F150, VIN: 1FTEW1CP1FKE43063.

Counts One through Four
Healthcare Fraud
[Violation of 18 U.S.C. § 1347]

34.     The allegations contained in paragraphs 1 through 33 are realleged and fully incorporated herein.

35.     On or about November 24, 2014, in the Fort Worth Division of the Northern District of Texas and elsewhere, the defendant, **David Roy Williams**, knowingly and willfully executed and attempted to execute a scheme and and artifice to defraud and obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of United HealthCare Services, Inc., which managed and maintained a health care benefit program as defined in 18 U.S.C. § 24(b), in connection with the delivery of and payment for health care benefits, items, and services, with individual executions of the scheme to defraud being listed in each of the following counts:

| Count | Intials of Client | Date of Billing | Amount Billed |
|-------|-------------------|-----------------|---------------|
| 1 | N.D. | November 24, 2014 | $    250.00 |
| 2 | J.C. | April 1, 2015 | $    250.00 |
| 3 | M.G. | April 26, 2016 | $    300.00 |
| 4 | N.B. | November 11, 2014 | $    300.00 |

all in violation of 18 U.S.C. § 1347.

## Forfeiture Allegation
(18 U.S.C. § 982(a)(7); 28 U.S.C. § 2461(c))

The allegations contained in the Introduction and Counts One through Four of this indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 982(a)(7).

Upon conviction of the offenses in violation of 18 U.S.C. § 1347, set out in Counts One through Four of this indictment, the defendant, **David Roy Williams**, shall forfeit to the United States of America, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, constituting, or derived from, gross proceeds obtained, directly or indirectly, as a result of the offenses. The property to be forfeited includes, but is not limited to: (1) his residence, located at 4503 Blue Grass Circle, Mansfield Texas, (2) a 2014 Toyota Tundra, and (3) a 2015 Harley Davidson.

Pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. §§ 982(b)(l) and 28 U.S.C. § 2461(c), if any of the property described above, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property up to the value of the previously described property that is subject to forfeiture.

All pursuant to 18 U.S.C. § 982(a)(7) and 28 U.S.C. § 2461(c).

A TRUE BILL.

_____
FOREPERSON

ERIN NEALY COX
UNITED STATES ATTORNEY

_____
P.J. MEITL
Assistant United States Attorney
District of Columbia Bar No. 502391
Virginia Bar No. 73215
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8680
Facsimile: 214-659-8812
Email: philip.meitl@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

THE UNITED STATES OF AMERICA

v.

DAVID ROY WILLIAMS (01)

INDICTMENT

18 U.S.C. § 1347
Health Care Fraud
4 Counts

18 U.S.C. § 982(a)(7); 28 U.S.C. § 2461(c)
Forfeiture Notice

A true bill rendered

-------------------------------------------------------------------

FORT WORTH                                                FOREPERSON

Filed in open court this 18th day of January, 2018.

-------------------------------------------------------------------

**Defendant on Pretrial Release.**

-------------------------------------------------------------------

UNITED STATES MAGISTRATE JUDGE
Magistrate Court Number: 4:17-MJ-784-BJ